IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| VIERICAN, LLC,<br><br>                              Plaintiff,<br><br>       vs.<br><br>MIDAS INTERNATIONAL, LLC f/k/a,<br>MIDAS INTERNATIONAL<br>CORPORATION,<br><br>                              Defendant. | CIVIL NO. 19-00620 JAO-RT<br><br>**ORDER DENYING DEFENDANT'S<br>MOTION TO COMPEL AND<br>STAYING CASE** |

**ORDER DENYING DEFENDANT'S MOTION TO COMPEL AND
STAYING CASE**

Plaintiff VieRican, LLC ("Plaintiff") brings state law claims against

Defendant Midas International, LLC ("Defendant") arising out of the parties'

franchise relationship.  Defendant moves to compel arbitration and either stay the

case pending arbitration or dismiss Plaintiff's Amended Complaint.  For the

reasons stated below, Defendant's motion to compel is DENIED and the case is

STAYED.

## I.    BACKGROUND

### A.    Facts

In October 2014, Plaintiff entered into a Franchise Agreement with

Defendant.  ECF No. 11 (Am. Compl.) ¶ 19.  The Franchise Agreement provided

that certain claims were subject to arbitration in Florida. *See, e.g.*, ECF No. 38-6 at 36–38.

In November 2017, a disagreement arose between the parties over reimbursement of advertisement expenses and royalty payments. *See* ECF No. 11 ¶ 21. Plaintiff contends Defendant acknowledged it owed Plaintiff nearly $30,000 in overdue advertising expenses, and this prompted Plaintiff to delay submitting certain monthly statements, which had the effect of withholding royalties due to Defendant. *See id.* Defendant thus sent Plaintiff a notice of default on January 29, 2018, which Plaintiff had until February 27, 2018[1] to cure. *See id.* ¶ 22. Plaintiff alleges it cured the default within that timeframe, but Defendant refused to debit Plaintiff's account for the royalty payments so that it could wrongly claim Plaintiff failed to cure the default. *See id.* ¶¶ 23–24. Defendant terminated the Franchise Agreement in March 2018 and later assumed control over the premises where Plaintiff had been operating the franchise. *See id.* ¶¶ 25–31. But for Defendant's illegal termination of the Franchise Agreement and this conduct, Plaintiff contends it would still be operating a franchise at that location. *See id.* ¶ 31.

Plaintiff therefore brings claims for (1) wrongful termination of a franchise agreement; (2) violation of the Hawaiʻi Franchise Investment Law, Hawaiʻi

---

[1]  Plaintiff identifies the deadline to cure as "February 27, 2019," however, that appears to be a typographical error. *See* ECF No. 11 ¶ 22.

Revised Statutes ("HRS") § 482E-6; (3) breach of contract; (4) breach of good faith and fair dealing; (5) tortious interference with contractual relations; (6) tortious interference with prospective business advantage; (7) breach of contract; (8) unjust enrichment; and (9) conversion.  *See generally* ECF No. 11.

**B.    Procedural History**

Plaintiff filed a Complaint against Defendant and, after the Court raised certain jurisdictional concerns, filed an Amended Complaint.  *See* ECF Nos. 1, 7, 8, 11.  On December 23, 2019, Defendant filed an initial motion to stay the case pending arbitration or to dismiss the Amended Complaint.  *See* ECF No. 20.  The Court then issued certain orders attempting to clarify the relief Defendant sought, particularly because Defendant had not moved to compel arbitration, *see* ECF No. 30, and ultimately denied that motion without prejudice, *see* ECF No. 32. Defendant sought reconsideration of that Order, *see* ECF No. 33, which the Court denied, *see* ECF No. 34.

Defendant then filed an arbitration demand with the American Arbitration Association ("AAA") in Florida.  *See* ECF No. 38-3.  Plaintiff filed a Motion for Preliminary Injunction, seeking to prevent Defendant from proceeding with that arbitration.  *See* ECF No. 37.  The next day, Defendant filed the present motion, seeking to compel arbitration and either stay or dismiss the case, *see* ECF No. 38, which Plaintiff opposes, *see* ECF No. 39.  The parties agreed to stay arbitration

pending the Court's ruling on the present motion, *see* ECF No. 52-2 at 2, and Plaintiff withdrew its motion for a preliminary injunction, *see* ECF No. 41.

The Court held a telephonic hearing on the motion on July 2, 2020. *See* ECF No. 56.

## II.   DISCUSSION

### A.   The Federal Arbitration Act ("FAA")

The parties' agreement is governed by the FAA. *See, e.g.*, ECF No. 38-6 at 38 (§ 10.12(d)). An arbitration agreement within the scope of the FAA "shall be valid, irrevocable, and enforceable," except "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Any party "aggrieved by the alleged . . . refusal of another to arbitrate" may petition a district court for an order compelling arbitration in the matter provided for in the agreement. *Id.* § 4; *see also id.* § 3 (providing district court may stay action if it is satisfied that the issue involved in the suit is referable to arbitration pursuant to parties' agreement). "The FAA 'mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

"Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate

between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citation omitted).  However, "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (citations omitted).  If the delegation clause is clear and unmistakable, "the only remaining question is whether the particular agreement *to delegate* arbitrability—the Delegation Provision—is itself unconscionable." *Brennan*, 796 F.3d at 1132 (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010) (addressing *only* whether a delegation provision was unconscionable where the plaintiff challenged an arbitration agreement as unconscionable and the defendant sought to enforce the specific delegation provision to send that question to the arbitrator)).

**B.    The Delegation Provision Is Clear and Unmistakable**

Defendant argues that the parties agreed to arbitrate gateway questions of arbitrability, including disputes regarding whether a claim is subject to arbitration and whether the Franchise Agreement or its arbitration clause is unconscionable. In support, Defendants point to certain provisions in the Franchise Agreement, which state:

> Except for actions related to or based on the Proprietary Marks
> or the copyrights of Midas or to enforce the provisions of Section
> 2.4 [confidentiality] or 8.7 [obligations after termination] of this
> Agreement, which Midas may bring in a court of competent

jurisdiction, all controversies, disputes[,] claims, causes of actions and/or alleged breaches or failures to perform between Midas . . . and Franchisee . . . arising out of or related to:  (1) this Agreement; (2) the relationship of the parties; (3) *the validity of this Agreement*; or (4) any aspect of the Midas Shop licensed herein (collectively, "Claims") shall be submitted for arbitration on demand of either party to the American Arbitration Association [AAA].

. . . .

[I]f a claim asserted in any legal proceeding not subject to mandatory arbitration, as specified in Section 10.12(a), involving Franchisee . . . and Midas . . . , both parties agree that the exclusive venue for disputes between them shall be in the state courts for Palm Beach County, Florida or federal courts located in or nearest to West Palm Beach, Florida[.]  Notwithstanding the foregoing, *the decision as to whether a claim is subject to mandatory arbitration shall be made by an arbitrator, not a court*.

ECF No. 38-6 at 36, 38 (§ 10.12(a), (d) (emphases added)).  Plaintiff does not dispute that this language constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.  *See, e.g.*, *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (holding that language delegating to arbitrators the authority to determine "the validity or application of any of the provisions of" the arbitration clause constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement).[2]  As was the case in *Brennan*, then, "three agreements—

---

[2]  This conclusion is further supported by the fact that the Franchise Agreement provides that arbitration proceedings will be conducted "in accordance with the

(continued . . .)

each nested inside the other—are relevant to [the Court's] analysis:"  (1) the

Franchise Agreement; (2) the arbitration clause; and (3) the delegation provision

(i.e., that delegates arbitrability and enforceability questions to the arbitrator).  796

F.3d at 1133.  Defendant seeks to compel arbitration, Plaintiff challenges the

arbitration clause as unconscionable, and Defendant, in turn, urges enforcement of

the specific delegation clause of that contract to send that question to an arbitrator.

*Rent-A-Center* therefore controls this case, meaning the Court must enforce the

parties' delegation provision unless it is unconscionable.  *See id.* at 1132–33; *see*

*also Momot*, 652 F.3d at 987–88.

## C.  **Whether the Delegation Clause Is Unconscionable**

Unconscionability is determined by reference to the applicable state law.

*See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016).[3]  Although

the Franchise Agreement contains a choice-of-law clause selecting Delaware as the

applicable law, Plaintiff contends that under the relevant choice-of-law analysis,

Hawaiʻi law controls the relevant question here.  Thus, the Court first assesses

_____

(. . . continued)
then current rules of the [AAA] that apply to commercial arbitration."  ECF No.
38-6 at 37 (§ 10.12(a)).  The Ninth Circuit has held that "incorporation of the AAA
rules constitutes clear and unmistakable evidence that the contracting parties
agreed to arbitrate arbitrability."  *Brennan*, 796 F.3d at 1130.

[3]  However, a generally applicable state-law contract defense, based in
unconscionability or otherwise, is displaced by the FAA if it has a disproportionate
effect on arbitration.  *See Tompkins*, 840 F.3d at 1023.

what substantive law applies before turning to address whether the delegation clause is unconscionable under it.

### 1. Choice of Law

Plaintiff argues (and Defendant does not dispute) that because jurisdiction for this action rests on diversity, Hawaiʻi choice-of-law rules apply.  The parties agree that, where, as here, a contract contains an explicit choice-of-law clause, Hawaiʻi courts are guided by the Restatement (Second) of Conflict of Laws § 187.[4]

Plaintiff contends first that Delaware has no substantial relationship to the parties or the transaction, and there is no other reasonable basis for the parties' choice.  As Defendant notes, though, both parties are limited liability companies organized under and governed by Delaware law.  *See* ECF No. 11 ¶¶ 1, 3; *ABF Capital Corp. v. Osley*, 414 F.3d 1061, 1065–66 (9th Cir. 2005) (noting, among

---

[4]  The Restatement (Second) of Conflict of Laws § 187(2) provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

other things, that a substantial relationship existed with chosen law of New York where two parties to an agreement were New York limited partnerships). Moreover, at the time the parties entered into the Franchise Agreement, and at all times relevant to this dispute, the contracting party was Midas International Corporation, a Delaware corporation. *See id.* ("A substantial relationship exists where one of the parties is domiciled or incorporated in the chosen state."); *see also* ECF No. 38-6 at 3 (identifying parties to the Franchise Agreement); ECF No. 38-7 at 1, 8 (same); *see also* ECF No. 11 ¶ 4 (alleging Midas International Corporation converted to a Delaware LLC in June 2019, i.e., after the events giving rise to this dispute). The Court therefore concludes this is sufficient to demonstrate a substantial connection between Delaware and the parties.

The Court also concludes Plaintiff has not demonstrated that applying Delaware unconscionability law violates a fundamental policy of Hawai'i law. There is no bright-line definition of a "fundamental policy," but to be fundamental, a policy must be a substantial one. *See* Restatement (Second) of Conflict of Laws § 187, cmt. g. The forum court cannot "refrain from applying the chosen law merely because [it] would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law." *Id.* Plaintiff argues the choice-of-law provision violates Hawaii's fundamental policy because it effectively disables some of Hawaii's substantive laws and thus impacts the merits

of Plaintiff's claims. *See* ECF No. 39 at 16–18. Plaintiff thus asks the Court to find the choice-of-law clause unenforceable with respect to the delegation clause because it is unenforceable with respect to its broader claims. *See id.* But the section 187 analysis is not so broad. Instead, a Court must identify the particular issue and assess whether the choice-of-law clause is enforceable with respect to that discrete issue. *See* Restatement (Second) Conflict of Laws § 187(2); *see also id.*, cmt. i. Thus, the question is not whether resolving Plaintiff's claims under Delaware law would violate Hawaii's fundamental policy, or even whether resolving the enforceability of the arbitration agreement as a whole would violate that policy; instead, it is whether conducting an unconscionability analysis of the delegation clause under Delaware law would violate Hawaii's fundamental policy. *See Ratajesak v. New Prime, Inc.*, No. SA CV 18-9396-DOC (AGRx), 2019 WL 1771659, at *4–6 (C.D. Cal. Mar. 20, 2019); *see also Wainwright v. Melaleuca, Inc.*, No. 2:19-cv-02330-JAM-DB, 2020 WL 417546, at *3 (E.D. Cal. Jan. 27, 2020).[5] Plaintiff failed to identify a distinction between Delaware's and Hawaii's

---

[5] None of the cases Plaintiff cites addressed the unconscionability analysis of a *delegation* clause. *See, e.g.*, *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996 (9th Cir. 2010). As the Ninth Circuit explained in *Brennan*, *Bridge Fund* "addressed a situation . . . that contained only one arbitration provision"; "[i]t did not address the situation here [that]—critically—involves *multiple* severable arbitration agreements. *Rent-A-Center* controls in cases like the present one, where there are multiple severable arbitration agreements, only one of

(continued . . .)

unconsciounability laws that is so substantial that it amounts to a fundamental policy difference in this specific context.  And as Defendant notes, the unconsciounability analysis under each state's law is not materially different. Delaware law therefore applies.[6]

### 2.     Whether the Delegation Clause Is Unconscionable under Delaware Law

Under Delaware law, proving unconscionability requires proving an absence of meaningful choice and contract terms unreasonably favorable to one of the parties.  *See Ketler v. PFPA, LLC*, 132 A.3d 746, 748 (Del. 2016).  Delaware courts have developed a handful of factors to assess unconscionability but, as with courts in Hawaiʻi, have broadly grouped these under two inquiries:  procedural

---

(. . . continued)
which is 'at issue.'"  796 F.3d at 1134.  The other case Plaintiff cites, *Burgo v. Lady of Am. Franchise Corp.*, No. SA CV 05-0518 DOC (RNBx), 2006 WL 6642172 (C.D. Cal. May 4, 2006), did not involve arbitration.

[6]  Notably, Plaintiff has not articulated why the arbitrator would be unable to determine that the arbitration agreement itself is unconscionable—and even apply another forum's unconscionability law in doing so—because he or she concludes the choice-of-law provision is unenforceable as to that specific issue.  *See Ratajesak*, 2019 WL 1771659 at *6–7; *see also* ECF No. 39 at 22–24.  Indeed, Defendant concedes that Plaintiff may raise its unconscionability arguments before the arbitrator, *see* ECF No. 52 at 10, and at the hearing repeated that Plaintiff is free to argue Hawaiʻi law applies or that certain provisions are unconscionable. Without explaining how the delegation clause limits the arbitrator's ability to determine whether the choice-of-law provision is enforceable, then, the Court can neither conclude that Hawaiʻi law must apply here, or that the choice-of-law clause somehow renders the delegation provision unenforceable.

unconscionability and substantive unconscionability.  *See James v. Nat'l Fin., LLC*, 132 A.3d 799, 814–15 (Del. Ch. 2016); *see also Narayan v. Ritz-Carlton Dev. Co., Inc.*, 140 Hawai'i 343, 350–51, 400 P.3d 544, 551–52 (2017).

### a.      Procedural Unconscionability

Procedural unconscionability assesses whether the parties had unequal bargaining or economic power, whether an unsophisticated or uneducated party is being exploited, whether the contract is a form or boilerplate agreement offered on a take-it-or-leave-it basis to the party in the weaker economic position, and the circumstances surrounding the execution of the contract, such as its commercial setting.  *See James*, 132 A.3d at 826; *see also Narayan*, 140 Hawai'i at 351, 400 P.3d at 552 ("Procedural unconscionability, or unfair surprise, focuses on the process by which the allegedly offensive terms found their way into the agreement." (internal quotations marks and citation omitted)).

Plaintiff argues only that because franchise agreements are generally considered adhesion contracts, the Franchise Agreement here—and thus the delegation provision within it that Defendant drafted and offered on a take-it-or-leave-it basis—are procedurally unconscionable.  However, under Delaware law, a disparity in bargaining power is not enough to show unconscionability; instead, there must be an absence of meaningful choice—which cannot be shown if the party could walk away from the contract.  *See Ketler*, 132 A.3d at 748.  As

Defendant argues, Plaintiff could have walked away from the agreement and opened a different franchise or an independent business.  In addition, Plaintiff was provided a Franchise Disclosure Document over two months before executing the Franchise Agreement.  *See* ECF No. 37; ECF No. 38-8 at 1; ECF No. 38-6 at 39. That document clearly disclosed the arbitration clause as a potential "RISK FACTOR,"[7] later included the arbitration clause in a summary of key provisions (and identified which sections of the Franchise Agreement contained the arbitration clause), and attached the Franchise Agreement.  *See* ECF No. 38-7 at 2, 75.  Before signing the Franchise Agreement, Plaintiff's sole member also certified he had read and understood the Franchise Agreement and disclosure document, and had consulted with an attorney, accountant, or other business advisor before executing the Franchise Agreement.  *See* ECF 38-9 at 1–2.  Finally, even if one

---

[7] The second page of the document stated:

> Please consider the following RISK FACTORS before you buy this franchise:
>
> 1. THE FRANCHISE AGREEMENT REQUIRES YOU TO RESOLVE CERTAIN DISPUTES WITH US BY ARBITRATION ONLY IN PALM BEACH GARDENS, FLORIDA.  OUT-OF-STATE ARBITRATION MAY FORCE YOU TO ACCEPT A LESS FAVORBALE SETTLEMENT FOR DISPUTES.  IT MAY ALSO COST YOU MORE TO ARBITRATE WITH US IN PALM BEACH GARDENS, FLORIDA THAN IN YOUR OWN STATE.

ECF No. 38-7 at 2.

party had greater bargaining power, the agreement was still between two sophisticated entities. Plaintiff therefore has not shown procedural unconscionability.

The result would be the same under Hawaiʻi law. Plaintiff cites only *Narayan*—but that case recognizes that "adhesion contracts are not unconscionable *per se*." 140 Hawaiʻi at 351, 400 P.3d at 552; *see also id.* n.6, 400 P.3d at 552 n.6 ("This court has noted that inequality of bargaining power, *in and of itself*, does not transform an agreement to arbitrate . . . into an unenforceable contract of adhesion." (internal quotation marks and citation omitted)). And the facts here are distinguishable from *Narayan*—where individuals signed purchase agreements that *did not* contain an arbitration clause, and instead referenced a separate document (already recorded in the Bureau of Conveyances before the purchase agreements were executed) that *did* contain an arbitration provision. *See id.* at 351–52, 400 P.3d at 552–53. The Hawaiʻi Supreme Court found procedural unconscionability based on the unequal bargaining power and the take-it-or-leave-it nature of the arbitration provision, but also because there was an element of unfair surprise given the arbitration provision was buried in a separate document, and ambiguous when read in combination with the purchase agreement that did not require

arbitration.  *See id.*[8]  Plaintiff has not demonstrated any comparable unfair surprise here.

### i.   Substantive Unconscionability

Under Delaware law, substantive unconscionability addresses whether the terms of the agreement entail:  the denial of basic rights and remedies, penalty clauses, disadvantageous clauses either in inconspicuous locations or fine print or phrased in confusing language to obscure that they are disadvantageous, and an overall imbalance in the obligations and rights imposed by the bargain.  *See James*, 132 A.3d at 815–16; *see also Narayan*, 140 Hawaiʻi at 351, 400 P.3d at 552 ("Substantive unconscionability . . . focuses on the content of the agreement and whether the terms are one-sided, oppressive, or unjustly disproportionate." (internal quotation marks and citations omitted)).

---

[8]  Nor has Plaintiff articulated why the Court should consider cases decided under California law.  In any event, those cases are not persuasive here.  *See Galen v. Redfin Corp.*, Nos. 14-cv-05229-TEH & 14-cv-05234-TEH, 2015 WL 7734137, at *8–9 (N.D. Cal. Dec. 1, 2015) (finding some degree of procedural unconscionability where individuals felt pressure to quickly sign agreement without reading it because they were unable to begin work until it was signed and clause incorporated AAA rules, but plaintiffs were not provided a copy of those rules); *see also Gountoumas v. Giaran, Inc.*, No. CV 18-7720-JFW(PJWx), 2018 WL 6930761, at *8 (C.D. Cal. Nov. 21, 2018) (finding some degree of procedural unconscionability where individual felt compelled to accept delegation clause after having already worked hundreds of hours for defendant who was threatening not to pay her and the clause incorporated AAA rules without providing a copy of those rules).

Because only the delegation clause is at issue, the Court focuses on Plaintiff's substantive unconscionability challenges that are specific to the delegation provision. *See Rent-A-Center*, 561 U.S. at 72–74 (declining to consider argument that fee-splitting and discovery clauses rendered entire arbitration agreement invalid because plaintiff had not argued those clauses made it unconscionable to require him to arbitrate the enforceability of the arbitration agreement). Plaintiff points to two: (1) the forum selection clause and (2) the attorney's fees provision.[9] *See* ECF No. 39 at 22–24.

Plaintiff first argues that requiring it to travel to Florida to arbitrate arbitrability is unconscionable given it is based in Hawaiʻi and would therefore incur great cost and expense. As noted above, Plaintiff had adequate notice of the risk that arbitration would be in Florida and may prove more costly, and had over two months to consider this risk. *See* ECF No. 38-7 at 2. The Court finds persuasive *Gountoumas*, which held—in response to a similar challenge—that arguments regarding inconvenience and expense were not specific enough to the

---

[9] Defendant argues the Court cannot look at anything outside the delegation provision. Not so. *Rent-A-Center* supports that a court should consider an argument that another provision, when applied to the delegation provision, renders the delegation provision unconscionable. *See* 561 U.S. at 74 ("[Plaintiff] would have had to argue that the limitation upon the number of depositions causes the arbitration of his claim that the Agreement is unenforceable to be unconscionable.").

delegation provision because the plaintiff had not shown she would be required to travel to the inconvenient forum to litigate the limited issue of arbitrability or incur prohibitive expenses in litigating that issue.  *See* 2018 WL 6930761 at *11.  The same is true here, where Plaintiff has not demonstrated the inconvenience and unconscionability of the chosen forum for resolving the dispute regarding whether the arbitration clause itself governs its claims here.[10]

While Plaintiff cites other cases applying California law, neither is persuasive.  In one, the court included no analysis and the defendant had agreed to arbitrate elsewhere—effectively mooting the issue.  *See Galen*, 2015 WL 7734137 at *10.  The other relied on a Ninth Circuit case (also applying California law) that addressed the arbitration clause as a whole—not merely a delegation provision. *See Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 421 (N.D. Cal. 2015) (citing *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1289 (9th Cir. 2006) (en banc)).

Indeed, in more recent cases, the Ninth Circuit has recognized that "California appellate courts considering forum selection clauses in adhesion

---

[10]  *See also* AAA, Commercial Arbitration Rules and Mediation Procedures, R-32(c) ("When deemed appropriate, the arbitrator may also allow for the presentation of evidence by alternative means including video conferencing, internet communication, telephonic conferences and means other than an in-person presentation.  Such alternative means must afford a full opportunity for all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute and, when involving witnesses, provide an opportunity for cross-examination.").

contracts have held that neither inconvenience nor additional expense in litigating in the selected forum is part of the test of unreasonability." *Tompkins*, 840 F.3d at 1028 (internal quotation marks, brackets, and citation omitted).  Rather, California courts must enforce a forum selection clause unless the clause is unreasonable because "the forum selected would be unavailable or unable to accomplish substantial justice; inconvenience and expense of the forum alone is not sufficient." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1264–65 (9th Cir. 2017) (internal quotation marks and citation omitted).  Plaintiff has not made such a showing here—nor argued the expense would amount to the forum being, in effect, unavailable.  To the extent Plaintiff has not pointed the Court to any specific Hawai'i law, and Hawai'i would look to California law, Plaintiff's argument similarly fails under Hawai'i law.

As the Supreme Court observed in *Rent-A-Center*, it is "much more difficult" to establish that a certain provision is unconscionable in the context of a *delegation provision* as compared to showing that the same limitation renders arbitration of a plaintiff's complex and fact-bound claims unconscionable.  *See* 561 U.S. at 74.  Plaintiff failed to make that showing here with regard to the forum selection clause as applied to the delegation provision.

18

Plaintiff also argues that a clause in the Franchise Agreement regarding attorneys' fees renders the delegation provision unconscionable.  That clause provides:

> In the event Midas is required to employ legal counsel or to incur other expense to enforce any obligation of Franchisee hereunder, or to defend against any claim, demand, action, or proceeding by reason of Franchisee's failure to perform any obligation imposed upon Franchisee by this agreement, including in arbitration pursuant to Section 10.12 below, and provided that legal action is filed by or against Midas *and such action or the settlement thereof establishes Franchisee's default hereunder*, then Midas shall be entitled to recover from Franchisee the amount of all reasonable attorneys fees of such counsel and all other expenses incurred in enforcing such obligation or in defending against such claim, demand, action, or proceeding, whether incurred prior to or in preparation for or contemplation of the filing of such action or thereafter.

ECF No. 38-6 at 35 (§ 10.4 (emphasis added)); *see also id.* at 37 (noting at § 10.12(b) that an arbitrator may award fees "in accordance with Section 10.4 of this Agreement").  Again, this clause is not specific enough to the delegation provision.  Indeed, Plaintiff has not articulated how Defendant would be entitled to fees under this clause even if Defendant prevails in showing that the arbitration clause is enforceable and applicable because, under the plain language of this fees clause,

that would still not "establish[ Plaintiff's] default." *See, e.g.*, *id.* at 26–33 (provisions addressing "Default and Termination").[11]

Because the delegation clause is not unconscionable, the Court therefore concludes that an arbitrator must decide whether the parties' arbitration clause is enforceable and applicable to Plaintiff's claims.

## D.     The Court Cannot Compel Arbitration, but Will Stay the Action

In light of the preceding conclusion, the Court might otherwise grant Defendant's motion and compel arbitration. However, Defendant previously told this Court that it could not compel arbitration because the parties agreed to arbitrate arbitrability in *Florida*, and 9 U.S.C. § 4 only permits a district court to compel arbitration within its own district. *See* ECF No. 33 at 3 & n.2, 5 & n.3 (citing *Lexington Ins. Co. v. Centex Homes*, 795 F. Supp. 2d 1084, 1091 (D. Haw. 2011) (transferring case to Texas because court lacked power to compel arbitration outside Hawai'i and compelling arbitration in Hawai'i was contrary to parties'

---

[11] Although Section 10.4 is inapplicable to certain types of arbitration proceedings, Plaintiff repeatedly argued that it applies here, *see, e.g.*, ECF No. 39 at 8, 17, 23, and at the hearing Defendant agreed Section 10.4 applies and requires it to prove Plaintiff's default before it is entitled to fees.

agreement)).  Given that representation, the Court DENIES Defendant's motion to compel.[12]

The Court nonetheless still has discretion under 9 U.S.C. § 3 to either stay or dismiss claims that are subject to the arbitration agreement.  *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014).  Because the arbitrator may ultimately conclude that Plaintiff's claims are not arbitrable, the Court concludes that a stay, rather than dismissal, is appropriate.  *See Randhawa v. Skylux Inc.*, No. CIV. 2:09-2304 WBS KJN, 2010 WL 4069654, at *2–3 (E.D. Cal. Oct. 18, 2010) (denying motion to compel and staying case where motion was brought in forum other than parties' chosen arbitration forum).  For this same reason, the Court concludes that efficiency is better served by staying this case while the parties arbitrate arbitrability rather than transferring it to Florida.

---

[12]  There are certainly examples where district courts have compelled arbitration elsewhere.  *See, e.g.*, *Gountoumas*, 2018 WL 6930761 at *11 (California court compelling arbitration in Massachusetts).  And the Ninth Circuit has even upheld this when the party appealing an order compelling arbitration has not objected to that facet of the order.  *See Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1271 n.1 (9th Cir. 2002) ("Apart from waiver, Sovak does not challenge the district court's order compelling arbitration.  Therefore, we express no view as to whether the district court properly compelled arbitration in Chicago, even though the federal action was filed in California." (citation omitted)), *opinion amended on denial of reh'g*, 289 F.3d 615 (9th Cir. 2002).  Because Plaintiff has not indicated its position on this issue, the Court chooses to accept Defendant's argument.

### III.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration is

DENIED, and this action is STAYED pending the outcome of the parties'

arbitration on arbitrability.  Notwithstanding the stay, the parties shall file a joint

report regarding the status of the arbitration every 120 days, with the first status

report due 120 days from the date of this Order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, July 31, 2020.



_____
Jill A. Otake
United States District Judge

Civil No. 19-00620 JAO-RT, *VieRican, LLC v. Midas International, LLC*; ORDER DENYING DEFENDANT'S MOTION TO COMPEL AND STAYING CASE

22